THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DUANE ERICKSON, Defendant-Appellant.

Second District    No. 79-186

Opinion filed September 30, 1980.

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This appeal arises out of a conviction for murder for which the defendant was sentenced to not less than 25 nor more than 40 years' imprisonment.

The defendant claims he found his wife shortly after 6 p.m. on November 11, 1977, lying dead in a pool of blood on the floor of the laundry room of the apartment complex where they lived. He testified that his wife, Linda, had babysat for the next door neighbors, the Rosenbauers, until 6 o'clock, when Rick Rosenbauer came home. She then left and came back to the Erickson apartment and got some clothes together to be laundered. She took them to the laundry room and the defendant went with her and after she started the washing machine he returned to the apartment. He dozed for a short time and upon awakening and finding Linda still not back, he returned to the laundry room where he found her lying dead. He claims he attempted to lift her up and felt for a heart beat, thus getting blood on his hands and clothing. Apparently, from the condition of her head, someone had battered her head against the laundry room floor, but the actual cause of death was found by the pathologist to be strangulation.

The defendant went to his next door neighbor upon finding his wife dead and asked him to accompany him back to the laundry room which the neighbor, Rick Rosenbauer, did. After viewing the body, Rosenbauer called the police. The police came and after some questioning of the defendant he was charged with murder.

At the trial, the defendant offered no reasonable explanation of his wife's death but contended that she must have been killed by an unknown intruder and that the circumstantial evidence against him was not sufficient to convict him beyond a reasonable doubt. It was established by the State's expert witnesses that the blood found on the defendant's coat as well as on his socks and the bottom of his trousers, and also a small speck of blood on his eyeglasses, was Type A blood—his wife's type—and not the defendant's blood—which was type O. An expert on "impact splatter" of blood testified that the dispersion of the victim's blood on the defendant's clothing was in a pattern suggesting the murderer had beaten the victim's head against the floor and that certain spots of blood had gotten on the defendant's clothing in the process or course of doing so. These spots were distinct from the blood stains which might have gotten on the defendant's clothing from lifting the victim's head or body off the floor. He also testified to the presence of a small partial hand print apparently made by a bloody hand on the sleeve of the defendant's jacket. Another expert, a forensic scientist for the State of Illinois, also testified as to the hand print made apparently by blood of the left hand of the victim which appeared on the right coat sleeve of the defendant, indicating that Linda

was alive at the time it was made, since she had apparently grabbed the defendant's coat sleeve before she died. The print, while not identifiable as a finger or hand print of the victim, was the same small size as her hand and much smaller than the hand of the defendant.

■■ The defense cites a number of cases following the general principle that where the evidence is purely circumstantial it must be of a conclusive nature and must produce a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Widmayer* (1948), 402 Ill. 143.) The cases cited by the defendant, however, are not similar in their facts to the case at bar. Neither *People v. Holtz* (1920), 294 Ill. 143, nor *People v. Wilson* (1948), 400 Ill. 461, were similar in their circumstances—the circumstances in *Holtz* were somewhat similar to the case at bar in that the defendants ascribed the murder to intruders but there was evidence to substantiate such a theory in that case, which is entirely lacking here. *Wilson* involved a fire and there was no proof that a murder was committed. The case of *People v. Howard* (1979), 74 Ill. App. 3d 870, contains some points of similarity, but there was also evidence to substantiate the defendant's contention that the murder of her child was the work of a personal enemy of the accused who was harassing her. In the case before us there is no such evidence of either an intruder or an enemy. Moreover, there is positive evidence tending to indicate that the defendant was in close proximity to the victim after she was bleeding and that the contact was other than gentle, due to the pattern of dispersion of her blood on his clothing. It is argued by the defense that no motive was shown and that therefore the circumstantial evidence carries no weight. While it is not the burden of the State to establish a motive, the presence of a motive is a factor in determining guilt in a purely circumstantial case. (*People v. Novotny* (1939), 371 Ill. 58, 62; *People v. Looney* (1927), 324 Ill. 375.) It was established in the case at hand that there was a life insurance policy in the defendant's favor on his wife's life but we do not consider this to be significant. Life insurance was rejected as a significant motive in *People v. Holtz*, where the court said:

> "The existence of the insurance policies and the condition of the title to the Holtz house, in the absence of other evidence, has no tendency to show a motive to destroy life. Such conditions are of usual occurrence, but in the absence of special circumstances in the particular case can not be regarded as furnishing a motive to those who would become beneficiaries because of the death of the insured person or the owner of the property." 294 Ill. 143, 161.

This language seems appropriate to the case we consider here. The fact that a husband has an insurance policy on his wife's life is such a common and usual thing that it has little significance in establishing a motive. The policy, moreover, was not recent, having been taken out some two years before the death of the victim.

Certain aspersions cast on the defendant's marriage during cross-examination are also, we think, inconclusive in establishing a motive, since the defendant testified that if his wife was having an affair he was not aware of it and he only learned of such a rumor after her death.

■■ Nevertheless, while the evidence may be said to be circumstantial as to the identity of the murderer, we do not find any evidence whatsoever supporting the defendant's hypothesis of an intruder having gotten into the building and killed his wife. Nor is there any persuasive evidence refuting the finding of the expert MacDonell that the pattern of blood dispersion in the drops of blood found on the defendant's clothing suggests that they resulted from the defendant beating his wife's head against the laundry room floor. Moreover, the small hand print on the defendant's coat sleeve clearly reflects resistance by the victim and that that resistance was against the defendant. While the defense suggests the partial print may have been the result of Rick Rosenbauer grabbing the defendant by the arm when he was arguing with him to leave the scene of the murder, it was unequivocally testified to that this print was very small, in keeping with the victim's exceptionally small hand. This is not in keeping with the suggestion that the print was a partial print of Rosenbauer's hand. Thus, there was clear physical evidence tending to negate the hypothesis of an unknown intruder. Besides, the circumstances here do not give rise to any reasonable hypothesis of an intruder. Such an intruder, having no previous relationship with the victim, would logically be either a robber or a rapist but robbery is an unlikely motive as a reason for a murderous attack on a woman in a laundry room and there was no evidence adduced suggesting rape or attempt thereat, thus the hypothesis of an intruder does not seem to be a reasonable one under the known facts. Nor is it logical to suppose that such an intruder would have left absolutely no evidence of his presence in the course of such a violent struggle as evidently occurred. We do not find the hypothesis that an unknown intruder committed the murder to be reasonable in this case. As our supreme court said in an oft-quoted statement in *People v. Russell* (1959), 17 Ill. 2d 328, 331:

> "The jury was not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt."

This is especially true where the hypothesis of the defendant is based on a mere surmise or possibility without any evidence to support it, as was true in this case. We think the evidence, whether circumstantial or not, was sufficient to sustain the conviction.

The judgment of the circuit court of Kendall County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and NASH, J., concur.