THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY DESPAIN, Defendant-Appellant.

Second District    No. 80-235

Opinion filed December 17, 1981.

Mary Robinson and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Leroy Despain was convicted of murder, following a jury trial, and sentenced to 20 years imprisonment. He appeals, contending only that he was not proved guilty beyond a reasonable doubt.

Defendant argues that the State's evidence is entirely circumstantial, both as to the criminal agency and as to defendant's involvement in the death of Margaret Lawton; and that the evidence does not clearly and convincingly show his guilt, but is consistent with a hypothesis of innocence.

On October 4, 1978, Dale Henricksen, a farmer in Kendall County, while "combining" his cornfield near Route 47, observed an object between corn rows, "raised the combine and went over it." He thought it was an animal of some kind whose legs were sticking out from a decaying blanket. He directed Tom Pedersen, an employee, to "disk" the cornfield, and, specifically to "disk" the object he had seen and "check it out." Pedersen testified that he did not see anything unusual while he was disking and asked Henricksen to describe the location; he then got off the tractor, found some papers and then the body, later identified as Margaret Lawton.

Pedersen also testified that at about 2:15 p.m. approximately two to four weeks before the body was found he had a conversation with the person whom he identified as defendant; that defendant, in a car, stopped in front of Pedersen's house, asked and received directions to Indianapolis. This was 300-400 yards west of the place where the body was found. The witness recalled this some two days before the trial. He said the person he described to the state's attorney and police was driving a "blue" car.

An officer testified that, on October 4, 1978, Pedersen showed him the body, located 326 yards from Route 47 which ran past the cornfield. It had been there for "quite some time." It was "badly decomposed," and parts of the skeleton were "scattered about." A spring-loaded silver clip held together some personal papers which showed the victim's name and address. Included was Margaret Lawton's receipt for her driver's license

application. Another officer testified that he removed two beads which were imbedded in the flesh of the body.

Later, in Margaret Lawton's apartment, officers found the title to a 1970 Pontiac, registered to the victim, and various other papers and objects.

Dr. Morgan, a dentist and forensic odontologist, examined the bones and skull of the victim as well as previous X rays of the head and spine of Margaret Lawton. In his opinion, the X rays and the jawbone and skull all belonged to the same individual. It was also stipulated that a serologist would testify that hair strands on combs and brushes found in Lawton's apartment were similar to hairs found on the victim's body. A rib bone fragment found in the victim's clothes was examined and a forensic scientist gave the opinion that the victim had type "A" blood.

The defendant, claiming to be "Jerry Keller," was arrested after a traffic violation in Campbellsville, Kentucky, on September 10, 1978, driving a white-over-blue 1970 Pontiac. Police officers testified that defendant had no identification papers for himself or the car; the car was later established to have belonged to Margaret Lawton; that defendant said he was in Kentucky to visit his parents and claimed to have purchased the car from a man in an Aurora bar, named "Olson," who was to have mailed him the bill of sale or registration. An officer recognized defendant as a previous neighbor in Campbellsville he knew as Leroy Despain, but defendant said his name was "Keller." At the Campbellsville police station defendant asked an officer to obtain his shirt and cigarettes seen by the officers in the back seat of the car. The defendant's sister testified that defendant had long used the name "Jerry Keller."

After the car was returned to Kendall County, investigating officers found a number of personal items including photographs, books, records, pots and pans in the trunk of the automobile which had belonged to Margaret Lawton.

Various blood stains were found on the upholstery, door posts and interior of the car, including papers which, on examination, were found to contain type "A" human blood. A stain on the cuff of a black shirt found in the car was also determined to contain type "A" human blood.

The coroner testified that the investigation had been unable to determine the cause of death; that while numerous fractures were found, it was assumed that these could have been caused when the disk ran over the body.

The State produced a number of witnesses to show the familiarity of the victim and the defendant. Carolyn Salewski, a bartender at the Fife and Drum Tavern, testified to the victim's habit of coming into the tavern after work and spending most of the evening at the tavern. There was other testimony that Margaret Lawton regularly came into the tavern, which was across the street from her residence, that she would leave to eat

dinner and then come back, usually staying until around 9:30 or 10 p.m. There was testimony that the victim was not a heavy drinker and would sometimes not drink at all while in the bar. Salewski testified that she saw the victim and the defendant approximately three times. She testified that she last saw the victim about two or three weeks before the police came to interview her about the victim's death. Another witness testified that he saw the victim and the defendant together in the bar once in September, that they left together and that this was approximately three or four weeks before the police came to interview the witness about the death. Another witness testified that the last time she saw the victim, the defendant was in the bar and he came over to have a drink with the victim. She testified that it was approximately 1½ to two months between the disappearance of the victim and the time when police interviewed her about the victim's death.

The manager of the apartment house in Aurora where Margaret Lawton was a resident from 1974 to 1978 testified that some time after her disappearance a black male possessing a front door key to Leland Towers came into the lobby, went directly to the mailboxes located on one side of the lobby and used a key to open the box for Room 904, Margaret Lawton's mailbox, and removed her mail. He then asked the manager if he would let him through the door allowing access to the elevators so that he could deliver Margaret Lawton's mail to her apartment as he said he had been requested. The manager refused. The manager testified to having seen a picture, but the context of the testimony did not clearly show that he was referring to a photograph of the black man rather than the defendant. When he answered the person's request as to what he should do with the victim's mail, by stating that he should put it back in the mailbox, the person did put it back in the mailbox and walked out of the lobby saying something about being hired to answer Margaret Lawton's phone and answer her mail. There is testimony that the individual waved to or greeted another tenant in the building, a "Reverend" Wesby who, when asked by the manager, said he did not know the man. There was no evidence that the victim had ever been seen with a black man. There were papers found in the victim's apartment alluding to a business run by the victim, "Margo's Manpower." None of the witnesses were familiar with details of the business.

The defense sought to establish a theory by cross-examination, particularly of Harold O'Banion, an employee of the towing firm which first stored the victim's car when it was returned to Illinois, that defendant bought the car in which he was found from a person named "Olson." O'Banion testified that defendant's brother-in-law, Raymond Brewer, asked to look into the vehicle; that after checking with the police he took Brewer to the car; that he did not know the matter involved a murder; that

he understood Brewer was looking for a "bill of sales." O'Banion said he saw the "bill of sale" and put it back in the glove box; but he did not know whether it was made out to "Jerry Keller" or who signed it. He said he did not look at the paper closely. On cross-examination of police officers, there was testimony that in the course of their investigation they took papers out of the glove compartment to look at them. Officer Loy testified that "we found a title, if [sic] I believe." No "bill of sale" was presented at trial. The officers denied removing any papers from the car.

No witnesses were called by nor testified for the defense.

■■ Proof of death and proof of a criminal agency causing death are essential elements of criminal homicide which may, however, be furnished by circumstantial evidence. (*People v. Gendron* (1968), 41 Ill. 2d 351, 360.) The manner of death and the means by which it was inflicted, including the implied intent, may be based on reasonable inferences from the proved and the established circumstances. (*People v. Kinzell* (1969), 106 Ill. App. 2d 349, 358.) "Circumstantial evidence is generally sufficient to support a conviction if it is inconsistent with any reasonable hypothesis of innocence, but the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. [Citation.]" (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249. See also *People v. Erickson* (1980), 89 Ill. App. 3d 56, 59.) The "proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. [Citation.]" (*People v. Williams* (1977), 66 Ill. 2d 478, 484-85.) Where the circumstantial evidence relied upon to support the defense that another committed the crime is unsatisfactory, based on mere surmise or possibility without evidence to support it, a hypothesis consistent with innocence may be rejected by the trier of the facts. *People v. Erickson* (1980), 89 Ill. App. 3d 56, 59; *People v. Weaver* (1980), 90 Ill. App. 3d 299, 310.

■■ We conclude that the circumstances are sufficient to prove beyond a reasonable doubt that defendant was guilty of the murder of Margaret Lawton. We agree with the argument of the State that the fact the victim's body was hidden in a cornfield and blood of her type was found distributed in the front seat area of her car is sufficient evidence to show that she met her end by criminal means. The circumstances are also sufficient to prove beyond a reasonable doubt that defendant was responsible for the victim's death. The defendant and the victim were shown to have been acquainted over a period of time; the victim and the defendant left a bar together at a time which was consistent with the disappearance of the victim; the defendant was placed near the scene where the body was found in the same time span; the defendant was later arrested in another State driving the victim's car with no identification for

himself or the car; the car contained a large number of the victim's personal items; there were numerous blood stains in the car which, on analysis, were shown to be the same blood type as that of the victim; and a black shirt belonging to the defendant was found in the car with the same type blood stains.

The circumstances relied upon by the defendant are insufficient to establish a hypothesis reasonably consistent with innocence.

■ Defendant's primary theory is that there is evidence that an unidentified black man could have been the killer and that this raises a reasonable doubt of defendant's guilt. We cannot agree. The evidence amounts to mere surmise. That the unidentified man had the key to the victim's mailbox, sought permission to bring her mail to her apartment (which required a magnetic card for the elevator) and who, when refused admittance to the apartment, put the mail back into the box, is insufficient to raise a reasonable doubt of guilt.

Defendant's reliance on *People v. Holsapple* (1975), 30 Ill. App. 3d 976, is misplaced. In *Holsapple*, there were facts which raised a reasonable doubt, such as the time factor, the existence of human hair belonging to a third party found on the victim's dress, and other evidence which raised a substantial possibility that someone other than the defendant was the assailant. Compare *People v. Gaskins* (1980), 82 Ill. App. 3d 37, and *People v. Erickson* (1980), 89 Ill. App. 3d 56.

■ Nor can we agree that the defendant has produced a credible theory of innocence in explaining away the damaging evidence of being found in the victim's blood stained car. The fact that he told officers that he had bought the car from a man named Olson in Aurora was not substantiated by the record. There was no evidence to establish the identity of the purported seller. The theory is further made incredible by the fact that when defendant was stopped by the Kentucky police and told them about the supposed sale, he did not produce any bill of sale or proof of ownership. It is also incredible that one would buy a blood splattered car and retain in it numerous belongings of Margaret Lawton, based on an innocent hypothesis. The evidence that there was some kind of a "bill of sale" in the glove compartment which has not been produced is a somewhat curious part of the record which the jury could assess but is not sufficient to support defendant's theory, particularly in view of the fact that the car title, unsigned, was found in the victim's apartment.

The proof supports the finding of defendant's guilt beyond a reasonable doubt, and excludes every reasonable hypothesis of innocence. The judgment is therefore affirmed.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.