THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HARMON PAISLEY, Defendant-Appellant.

Second District   No. 2—85—0675

Opinion filed October 31, 1986.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

James S. Williams, State's Attorney, of Mt. Carroll (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:
Following a jury trial, defendant, Harmon Paisley, was convicted

of the offenses of home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—
11), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), aggra-
vated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—
16(a)) and two counts of aggravated criminal sexual assault (Ill. Rev.
Stat. 1985, ch. 38, par. 12—14(a)(1)). Defendant appeals contending
that he was denied his right to cross-examine a State's witness about
the latter's pending charges, and that in sentencing him the trial
court failed to consider his rehabilitative potential.

Several witnesses including the victim, Gloria Martin, and the
defendant testified at trial. The victim testified that on October 8,
1984, she was awakened between 3 and 4 a.m. A man whom she
could not see, grabbed her and held a knife to her. He blindfolded her
and threatened to kill her if she did not comply with his requests. He
forced her to engage in various sexual acts. He then taped her eyes
shut with tape, bound her hands with her telephone cord, took her
money and keys, and placed a screwdriver handle in her vagina before
he left. She never saw her attacker and did not know who he was.
She denied ever having seen the defendant before.

Both the victim's neighbor and the physician who examined her
testified that she was crying and upset after the incident.

David Davenport testified for the State. He said he spoke to
defendant in the early morning of October 8, 1984. Defendant told
him that he had been out late, had had sex, and had done something
that he probably should have not done. On cross-examination, the de-
fense elicited that Davenport had been convicted of a felony in 1975.

A recess was held, and in chambers, the trial court stated that
both the defendant and Davenport were charged in connection with
another incident, unrelated to this case. Defense counsel argued that
he wanted to question Davenport as to whether he came forward with
his information before or after he was charged because it could show
bias in that the witness attempted to influence the authorities in re-
gard to his pending charges by disclosing this information. The trial
court stated that if such a line of questioning were allowed, then
there would be the danger that the State could bring out defendant's
involvement in this other offense, either in redirect examination of
Davenport, or in cross-examination of defendant. Davenport testified
in chambers that he was charged with home invasion for an incident
on November 10, 1984, and had not negotiated with the State con-
cerning that charge. He had not been promised that his testimony
would affect his treatment in his case. The trial court ruled that Dav-
enport could not be impeached with pending charges.

Darin Marquez testified that he knows defendant and had met

Gloria Martin. On October 4, 1984, he saw Gloria Martin at a depot party in a park, and they went together to defendant's house. Later, he, Gloria Martin, and defendant went out together to a bar; Gloria Martin put her arms around defendant. He dropped off Gloria Martin and defendant at her apartment, and defendant was going to let her into her apartment somehow as she had lost her keys.

Defendant's wife testified that she had met Gloria Martin, and that on August 4, 1984, Darin Marquez, Gloria Martin, and defendant had left defendant's home together.

Defendant testified that he saw Gloria Martin on August 4, 1984, when she and Darin Marquez came to his home. Darin Marquez dropped defendant and Gloria Martin off at her apartment, and defendant used a screwdriver to open her door because she had lost her keys. They had intercourse in the apartment. He had intercourse with her again in September.

Defendant testified that he next saw Gloria Martin in October. He called her after 3 a.m., and she told him that he could come over. She was wearing a bra and underpants. They had intercourse. Afterwards, she wanted him to tie her hands behind her back, put tape over her eyes, and insert something into her vagina. He asked to borrow money, and she consented. He denied threatening her or using a knife.

Gloria Martin testified that she was intoxicated on August 4, 1984, when she went to the depot picnic and did not recall with whom she went home. She only remembered that day and the next morning. She had had other occasions of memory blank and conceded that it was possible that she had seen the defendant on August 4, 1984. She denied the possibility of having had intercourse with the defendant in September 1984.

After the jury returned verdicts of guilty, the trial court sentenced the defendant to 20 years for each count of aggravated criminal sexual assault, 10 years for home invasion, 10 years for armed robbery, and 5 years for aggravated criminal sexual assault.

We reverse and remand for a new trial.

■ Defendant first argues that his right to cross-examine a State's witness was improperly restricted when the trial court refused to allow defense counsel to question David Davenport about his pending charges. The State first responds that the issue was waived because no objection was made at trial and because defendant did not file a post-trial motion. As defense counsel did argue in chambers that he wished to question Davenport about his pending charges in order to bring out possible bias, the issue was brought before the trial

court. While the issue was not raised in a post-trial motion, we consider the issue under the plain-error doctrine (87 Ill. 2d R. 615(a)) because it appears that the failure to allow cross-examination on this matter prejudiced defendant. *People v. Adams* (1984), 129 Ill. App. 3d 202, 206.

The sixth amendment to the Federal Constitution protects the defendant's right of cross-examination, and the defendant should be allowed a wide latitude to show bias. (*People v. Owens* (1984), 102 Ill. 2d 88, 103.) The pending charges of a witness may be shown or inquired into where it would reasonably indicate that his testimony might be influenced by bias, interest, or a motive to testify falsely. (*People v. Foley* (1982), 109 Ill. App. 3d 1010, 1014.) Cross-examination for this type of impeachment is a matter of right subject only to the trial court's broad discretion to preclude repetitive or unduly harassing interrogation and to confine the cross-examination to proper subject matter. (109 Ill. App. 3d 1010, 1015.) Defense counsel is entitled to inquire into promises or expectations of leniency, whether based on fact or whether imaginary. (*People v. Triplett* (1985), 108 Ill. 2d 463, 476.) Defense counsel need not show beforehand that any promises of leniency have been made or any expectations of special favor exist in the mind of the witness. *People v. Freeman* (1981), 100 Ill. App. 3d 478, 481.

The trial court refused to allow cross-examination of Davenport as to his pending charges because of a concern that the State would then have to be allowed, on redirect examination, to elicit the fact that defendant was charged with Davenport in an offense unrelated to the instant case. The trial court also was concerned that if Davenport was asked about the pending charges, defendant's involvement with Davenport in that charge would come out upon the State's cross-examination of defendant. The trial court apparently granted defendant's motion *in limine*, referred to by the court although not in the record, which asked that the State be restricted from introducing any evidence of defendant's other pending charges. Therefore the trial court's concern that it would have to allow questioning of Davenport and defendant as to defendant's pending charges is not understandable.

Davenport could have testified that there were charges pending against him without testifying that defendant was involved with him in those charges. In *People v. Foley* (1982), 109 Ill. App. 3d 1010, the court held that it was error not to allow a key State's witness to be cross-examined as to whether he had received probation for a robbery in which he was defendant's accomplice. The court ordered that on re-

trial the witness should not be allowed to testify about defendant's criminal record. The State could have been restricted similarly from eliciting in its examination of Davenport and defendant that defendant was involved in Davenport's pending charges. As defense counsel is entitled to cross-examine witnesses to show possible bias, and as defendant's involvement in those pending charges could have been kept from the jury, the trial court erred by not allowing this impeachment.

■ The standard of review is whether the error was harmless beyond a reasonable doubt; was it reasonably possible that the error might have contributed to the accused's conviction. (*People v. Foley* (1982), 109 Ill. App. 3d 1010, 1015.) The State first argues that any error was harmless beyond a reasonable doubt because, as in *People v. Owens* (1984), 102 Ill. 2d 88, there was other evidence heard that impeached the witness' credibility, *i.e.*, Davenport's testimony of a prior conviction. However, there is a distinction between evidence of convictions to impeach credibility and evidence of arrest or indictment to show bias. (*People v. Mason* (1963), 28 Ill. 2d 396, 400.) So while evidence of Davenport's pending charges could have shown bias, evidence of his conviction could not have. And, *Owens* can be distinguished on the basis that, unlike the present case, the jury did hear evidence of the State's witness' pending charge and potential bias. The court found that the evidence of the witness' criminal record, together with the evidence of bias, formed ample impeachment evidence.

■ The State next argues that Davenport testified during an offer of proof that he had not entered negotiations with the State regarding his pending charges and had not been promised or led to believe that his testimony would affect his treatment in his case. The State analogizes to *People v. Siler* (1980), 85 Ill. App. 3d 304, in arguing that it is unlikely that if the jury heard this evidence it would find Davenport to be more impeached than he already was, since his credibility had been impeached at trial by evidence of a prior conviction. However evidence of his pending charge would have shown possible bias in his testimony resulting from a desire to affect his treatment in any future negotiations regarding his pending charges. Therefore, the evidence of his pending charge would not have been merely cumulative impeaching evidence, as the State implies.

■ The State also argues that, as in *Siler*, any error was harmless because the witness' testimony was only corroborative of the offense. In *Siler* the court found that the witness' testimony was not essential because it merely corroborated the events that occurred *af-*

*ter* the offense. In the instant case, Davenport's testimony was not merely corroborative, and although ambiguous, it could have been interpreted as supportive of Gloria Martin's testimony that she was forced to engage in sexual acts. Moreover, Davenport's testimony was very damaging; while defendant testified that he had engaged in sexual acts with Gloria Martin, he claimed that she had consented. As the jury had to decide which version of the incident was more credible, Davenport's testimony that defendant told him he had done something he should not have done could have bolstered Gloria Martin's version.

In support of its argument that any error was harmless, the State also cites *People v. Eatherly* (1979), 78 Ill. App. 3d 777, which held that the trial court did not unduly restrict cross-examination of a minor whose testimony was substantially corroborated by another witness because she was asked at trial whether she had been made any promises by the State's Attorney or police. The court also noted that any error would have been harmless because there was overwhelming evidence of defendant's guilt. In contrast, Davenport's testimony was not insignificant and cumulative, and the evidence of defendant's guilt was not overwhelming. Furthermore, *Eatherly* involved a special consideration not present here, that of the Juvenile Court Act's prohibition of the use of proceedings brought under the Act as evidence against a minor for any purpose in another proceeding.

Gloria Martin testified that she never saw her attacker, never consented, and had never seen defendant before. The examining doctor and her neighbor testified that she appeared upset after the incident. On the other hand, witnesses testified that Gloria Martin did know defendant and had acted physically affectionate to him before. She admitted to drunken periods after which she could not remember what occurred. Defendant admitted to the incident but averred that Gloria Martin consented to this, and to previous, sexual incidents. He testified that Gloria Martin requested that he bind her, cover her eyes, and insert an object into her vagina. Although Gloria Martin was leaving town the next day, defendant claimed that either she offered all the money she had or that she consented to his request to borrow that money.

Davenport's testimony that defendant told him that he had done something he should not have done could have been interpreted by the jury as an admission of defendant's use of force upon Gloria Martin. In light of the two conflicting versions of the incident, and the questions raised about defendant's and Gloria Martin's credibility, Davenport's testimony was important to the State's case. Therefore,

the inability of defense counsel to cross-examine Davenport as to his pending charges and possible bias prejudiced defendant in that it might have contributed to his conviction.

Deciding the case as we do, we do not reach the remaining issue raised by defendant.

The judgment of the circuit court of Carroll County is reversed, and the cause is remanded for a new trial.

Reversed and remanded with directions.

HOPF and SCHNAKE, JJ., concur.