THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ETHEL JEAN SCHNURR, Defendant-Appellant.

Second District No. 2—88—1050

Opinion filed December 19, 1990.

REINHARD and GEIGER, JJ., specially concurring.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and

Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Ethel Jean Schnurr, was convicted of solicitation (Ill. Rev. Stat. 1987, ch. 38, par. 8—1) and was sentenced to 10 years' imprisonment. Defendant now appeals both her conviction and her sentence. We affirm.

Defendant approached Vernial Trotter (Trotter) on or about October 19, 1987, and offered him $1,000 to murder her husband, Emil Schnurr (Emil). At approximately 5:30 that evening, Trotter informed the police about defendant's plan. Later that evening, Trotter was fitted with an electronic eavesdropping device, which he wore as he and defendant traveled to Emil's home in the early morning hours of October 20. Parts of the conversation between defendant and Trotter were recorded. Trotter entered Emil's home and waited briefly with Emil and a police detective. He then returned to defendant's vehicle and informed defendant that Emil was dead. Moments later, police stopped defendant's vehicle and arrested defendant. Trial by jury resulted in defendant's conviction for solicitation and a 10-year prison term.

Defendant first raises several issues which, by her own admission, were not raised in her motion for a new trial. These issues are (1) whether a proper foundation was laid for admission of the eavesdropping tape; (2) whether the court erred in admitting testimony regarding the accuracy of a transcript of the eavesdropping tape; (3) whether the court erred in refusing to allow testimony that Trotter was on probation for a prior conviction; (4) whether the court erred in admitting testimony that defendant had previously lied to her husband about matters having no connection to the case; and (5) whether the court erred in admitting testimony that defendant stood to inherit Emil's estate upon his death. Defendant acknowledges that failure to raise an error in both a trial objection and a written post-trial motion constitutes waiver of the issue. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 186-87.) However, defendant argues that these issues should not be considered waived because the failure to raise the issues in the post-trial motion is a result of ineffective assistance of counsel.

To prove ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. (*People v. Al-*

*banese* (1984), 104 Ill. 2d 504, 525.) We find that defendant has failed to prove either prong of the test adopted in *Albanese*. Defendant's only argument regarding the deficiency of her counsel's performance is that the failure to raise in a post-trial motion all objections raised at trial drags counsel's performance below an objective standard of reasonableness. We do not find this persuasive. Defense counsel raised 19 issues in the post-trial motion. Counsel is not required to raise every trial objection in a post-trial motion. The inclusion of an issue is a matter of trial strategy; such strategy is entitled to great deference on review. (*People v. Ptak* (1990), 193 Ill. App. 3d 782, 789.) Defendant concedes that counsel's performance was otherwise not objectionable. We conclude that defense counsel's performance was reasonable and effective.

██ In addition, defendant has failed to prove that she was prejudiced by her counsel's performance. In *Enoch*, the court found that the defendant failed to show ineffective assistance of counsel because he did not show that, but for counsel's failure to file a post-trial motion, he would not have been convicted. (*Enoch*, 122 Ill. 2d at 202; see also *People v. Williams* (1989), 180 Ill. App. 3d 294, 300-01.) Under this analysis, we find that counsel's failure to raise the five contested issues in the post-trial motion did not affect the outcome of the trial and defendant's conviction.

██ Defendant's first contention is that the State failed to demonstrate a proper foundation for the admission of the eavesdropping tape. The original tape was sent to the Federal Bureau of Investigation (FBI), pursuant to court order, for "cleansing," *i.e.*, removing static to enhance the sound of the tape. The court allowed the cleansing of the tape on the condition "that Mr. Berry [defense counsel] will be present when the copies are made, exchanged mutually between you [trial counsel]." Defendant now argues that admission of the tape was error because the State did not demonstrate that no changes were made affecting the integrity of the tape. Defendant cites *People v. Nieves* (1982), 92 Ill. 2d 452, for the proposition that once some evidence of tampering or disturbing the integrity of a recording is introduced, the State must show a lack of alteration. *Nieves* dealt with section 108A—7(b) of the Code of Criminal Procedure of 1963, which provides that all recordings of eavesdropped conversations must be made available to the judge issuing the eavesdropping order immediately after the expiration of the order; the court is then to seal the recordings. (See Ill. Rev. Stat. 1989, ch. 38, par. 108A—7(b).) Our supreme court determined that the purpose of this requirement was "to prevent tampering, alteration or editing

and to preserve the integrity of the tapes." (*Nieves*, 92 Ill. 2d at 462.) The court then held that, "[w]here the issue is immediacy, *** if a defendant challenges the integrity and presents some evidence to support the challenge, the burden should shift to the State, *** and the State must show that the tapes have not been altered." *Nieves*, 92 Ill. 2d at 462.

■ Defendant now argues that the State must prove that the tape was not altered. Assuming, *arguendo*, the applicability of the *Nieves* standard, defendant has failed to introduce any evidence to challenge the integrity of the tape. While defendant has shown that the tape was sent to the FBI, she has not shown any evidence that the FBI disturbed the integrity of the tape. The fact that the tape was sent away is not a specific challenge to its integrity. The closest defendant comes to a challenge of the tape's integrity was stating that the first words she spoke to Trotter as he returned to the van were not the first words heard on the tape. This, however, was not raised in conjunction with a challenge to the tape and is insufficient in any event. We find no error in the admission of the eavesdropping tape.

■ The next issue not raised in the post-trial motion is whether it was error to place before the jury foundational testimony that a transcript of the eavesdropping tape was an accurate reflection of the contents of the tape. The court admitted testimony that the transcript accurately reproduced the content of the tape from Karen Larson, who transcribed the tape, Officer Pirages of the Rockford police department, who assisted in the transcription, and Trotter. Defendant acknowledges that evidence of the accuracy of a transcript is necessary for admission of the transcript. (See *People v. Dogoda* (1956), 9 Ill. 2d 198, 202; *People v. Rogers* (1989), 187 Ill. App. 3d 126, 132-34.) However, defendant argues that evidence of the accuracy of the transcript was offered to the jury as substantive evidence and not merely as a foundation.

■ We find this argument unpersuasive. Before the transcripts were distributed to the jury and the tape was played, the court admonished the jury as followed:

"THE COURT: Don't look at them until I give you the statement, please.

Ladies and gentlemen, you're receiving a transcript of the tape for the limited purpose of aiding you in consideration of the contents of the tape you're going to hear shortly and should not be considered for any other purpose, that is the transcript, or should only be considered as a guide [*sic*]. The

tape should be and is a controlling factor. When and if you find conflicting facts between the tape and transcript, the transcript should not be considered as evidence."
We conclude that this admonition, which was tendered to the court by defendant, was adequate to inform the jury of the limited nature and value of the transcript. Given the fact that the accuracy of the transcript must be attested to, the court could do no more to limit the jury's consideration of the transcript. Defendant argues that testimony regarding the accuracy of the transcript should have been given outside the jury's presence. However, defendant can cite no authority for this position, and we see no reason to adopt this new rule. We find no error in the admission of the foundational testimony.

The next allegation not raised in the post-trial motion is that the court erred in limiting defendant's cross-examination of Vernial Trotter. Defendant elicited testimony from Trotter regarding Trotter's convictions of armed robbery, attempted murder, and burglary. However, when defendant asked Trotter if he were on probation for his latest burglary conviction, the State's objection was sustained by the court. Defendant now argues that the court's ruling erroneously limited her right to reveal Trotter's possible bias, prejudice, or ulterior motive.

■ Cross-examination to show bias, interest, or motive to testify falsely is a matter of right. (*People v. Triplett* (1985), 108 Ill. 2d 463, 475.) However, this right is not unfettered. Questioning cannot be repetitive or unduly harassing, and the evidence must give rise to an inference that the witness has something to lose or gain by his testimony; therefore, the evidence must not be remote or uncertain. *Triplett*, 108 Ill. 2d at 475-76.

■ In the case before us, defendant was grasping at straws when she asked Trotter about his probation. It is undisputed that Trotter voluntarily approached the police with information about the solicitation and cooperated with their investigation. Trotter had nothing to gain by going to the police and nothing to lose if he had simply told defendant "No" and never mentioned this episode again. Defendant cites *People v. Paisley* (1986), 149 Ill. App. 3d 556, for the proposition that, when impeaching a witness' credibility, there is a distinction between evidence of prior convictions and evidence of bias; therefore, according to defendant, the evidence of Trotter's prior convictions was not sufficient to impeach Trotter's integrity. *Paisley* is distinguishable. The witness in *Paisley* had a current charge pending against him; the possibility of bias or motive there was evident. Here, however, no charges were pending against Trot-

ter. The police had nothing to offer Trotter, and he had no reason to report the incident to the police other than to report the crime. Because defendant's question about probation would have revealed nothing of value, defendant has failed to show any prejudice. Therefore, it was not error to limit the cross-examination of Trotter.

Next, defendant argues that certain testimony, both her own and that of Emil, should not have been elicited by the State. Emil testified that, approximately a year before the solicitation, defendant lied to him about her employment and that she often was gone from home over entire weekends. In the course of her own testimony, defendant was forced to admit that she never told Emil that the custody of her five children, all from previous relationships, had been irrevocably terminated and that, in spite of this fact, she often spoke to Emil about having the children live with them. Defendant contends that this evidence only tends to show that she lied on prior occasions about unrelated matters, such evidence being inadmissible per *People v. Garza* (1981), 92 Ill. App. 3d 723. However, the State contends that this evidence was introduced to show that the entire marriage of Emil and Ethel Schnurr was not one based on love or trust, but one founded on deceit and hidden motives.

Defendant's reliance on *Garza* is misplaced. *Garza* held that "[i]t is not permissible to reflect on a witness' credibility by establishing that on a former occasion that witness lied about a totally unrelated matter." (*Garza*, 92 Ill. App. 3d at 737.) However, in the case before us, Ethel Schnurr was not merely a witness but also the defendant. The State was attempting to show the nature of the marriage and defendant's relationship with her husband. The State's theory was that the marriage was "one big lie." The objected-to testimony was relevant to show the nature of the marriage. As such, it should not be excluded simply because it tends to prejudice defendant; the trial court must balance the relevance of the evidence and the prejudice to the defendant. (See *People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1078.) A reviewing court will not reverse a trial court's determination to admit evidence absent an abuse of discretion to the defendant's prejudice. (*Daniels*, 164 Ill. App. 3d at 1078.) We conclude that the trial court did not abuse its discretion in admitting the testimony. Therefore, no error is present.

Defendant also contests the introduction of testimony that she stood to inherit all of Emil's estate upon his death. Defendant contends that this testimony was inadmissible evidence of a motive for murder. To support this argument, defendant cites *People v. Holtz* (1920), 294 Ill. 143. In *Holtz*, our supreme court held that the

evidence of life insurance policies with defendant as beneficiary and ownership of property in joint tenancy with the murder victim was insufficient, in the absence of other evidence, to show motive for the defendant to murder the victim. (*Holtz*, 294 Ill. at 161-62.) Defendant here argues that *Holtz* makes inadmissible the testimony of Paul Cicero, an attorney, regarding the intestate distribution of Emil's estate in the event of his death. However, this court does not read *Holtz* to prohibit the introduction of such evidence. In *People v. Erickson* (1980), 89 Ill. App. 3d 56, this court similarly held that the existence of a life insurance policy on defendant's wife had little significance in establishing defendant's motive to murder her. (*Erickson*, 89 Ill. App. 3d at 58.) However, the introduction of evidence of the policy was not found to be error, let alone reversible error. *Holtz* and *Erickson* dealt with the sufficiency of the evidence, not the admissibility of it; defendant does not make any persuasive argument as to why this court should issue such a new rule. The admission of the evidence was not error.

 Because none of the issues above would have been decided in defendant's favor had they been preserved in a post-trial motion, the omission of these issues did not affect defendant's conviction. Therefore, counsel's representation of defendant was not ineffective. The five issues not raised in the post-trial motion are waived.

Defendant next contends that the court erred in denying her motion to suppress the eavesdropping tape of portions of her conversation with Trotter. The police obtained an order authorizing the prior use of an eavesdropping device on October 20, contending that an emergency situation existed which rendered unreasonable an attempt to secure a prior order the night before. Defendant argues here, as she did unsuccessfully in her motion to suppress, that no emergency existed and that a prior order should have been obtained. We disagree.

 Emergency use of eavesdropping devices is covered in section 108A—6 of the Code of Criminal Procedure of 1963, which provides in part:

"An emergency situation exists when, *without previous notice to the law enforcement officer sufficient to obtain prior judicial approval, the conversation to be overheard or recorded will occur within a short period of time*, the use of the device is necessary for the protection of the law enforcement officer or it will occur in a situation involving a clear and present danger of imminent death or great bodily harm to persons resulting from: (1) a kidnapping or the holding of a hostage by

force or the threat of the imminent use of force; or (2) the occupation by force or the threat of the imminent use of force of any premises, place, vehicle, vessel or aircraft." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 108A—6.)

Defendant argues that the police monitored the conversation between her and Trotter eight hours after receiving a sufficient basis for seeking an eavesdropping application prior to the eavesdropping.

Trotter first spoke to the police about the solicitation at approximately 5:30 p.m. on October 19. He spoke to police again at 9:50 p.m. after having gone with defendant to view Emil's house. Trotter finally met with police sometime after 11 p.m. when he showed two detectives a knife, a key to Emil's house, and a pair of gloves given to him by defendant. Trotter, at the police's behest, phoned defendant to try to convince her to employ the services of a "hit man" known by Trotter; in reality, the police were attempting to place an undercover officer in the role of the hit man. Defendant refused to meet anyone else and insisted that Trotter kill Emil. At approximately 12:40 a.m. on October 20, Trotter phoned defendant again in an effort to delay the commission of the murder. Defendant insisted that the murder had to be committed immediately for her alibi to work. Defendant and Trotter agreed to meet at 1:30 a.m. Trotter was then fitted with the eavesdropping device.

In these circumstances, we deem it reasonable to conclude that the police did not know definitely that an eavesdropping device would be required that evening or even who would be outfitted with such a device. Attempts to infiltrate an undercover officer or even delay the murder were defeated at approximately 12:40 a.m., 50 minutes before defendant was to pick up Trotter and take him to Emil's house. We determine that this 50-minute period was the type of "short period of time" provided for in the statute.

Defendant's argument that the police had over eight hours' notice before the conversation was to take place is meritless. Defendant argues that Trotter provided the police during the 5:30 phone call with all the evidence necessary to establish probable cause to believe that the offense of solicitation had been committed. Therefore, according to defendant, a judge could have authorized the eavesdropping based on this information. The police had nothing more than information regarding an alleged offense from a man with whom they had never before dealt. They had no reason to believe at that time that any eavesdropping would necessarily take place that evening. The police did not impermissibly delay seeking an eavesdropping permit during that period. We therefore conclude that the trial court did

not err in denying defendant's motion to suppress the eavesdropping tape.

Defendant next contends that the court erred in refusing her tendered jury instructions on theft and solicitation to commit theft. Defendant argues that she presented evidence that she solicited Trotter not to murder Emil, but to commit the crime of theft. Therefore, according to defendant, she was entitled to a jury instruction on her theory of the case. We disagree.

In general, a defendant is entitled to have the jury instructed on his theory of the case and on the law applicable to any statement of facts which the jury may properly find to have been proved. (*People v. Isbell* (1988), 177 Ill. App. 3d 854, 865.) In a criminal case, very slight evidence on a given theory will justify giving an instruction on that theory. (*People v. Cobb* (1989), 186 Ill. App. 3d 898, 906.) However, a defendant charged with a single offense cannot be convicted of an offense not charged unless the offense of which he is found guilty is a lesser-included offense of the one charged. *People v. Schmidt* (1988), 126 Ill. 2d 179, 183.

Defendant did testify that she solicited Trotter to commit the offense of theft. However, solicitation to commit theft is not a lesser-included offense of solicitation to commit murder. For an offense to be lesser included, "[t]he offense charged must include every element of the lesser offense, plus an additional element or elements, so that one cannot commit the offense charged without committing the lesser offense." (*People v. Stroner* (1983), 96 Ill. 2d 204, 209.) Clearly, one can solicit murder without soliciting theft. However, defendant argues that the State is not required to prove the solicitation of a specific offense to obtain a conviction of solicitation. According to defendant, to prove a solicitation the State need only prove that *some* offense was solicited. The offense of solicitation contains two elements: (1) an intent that an offense be committed; and (2) the encouragement, request or command on the part of the accused that the offense be committed. (See Ill. Rev. Stat. 1987, ch. 38, par. 8—1(a).) According to defendant, whether murder or theft was solicited, the elements of the offense are the same; therefore, the commission of one offense entails the commission of the other. We find this argument unpersuasive. The offense solicited is an essential part of both the charging instrument and the proofs adduced at trial. The State could not charge and present evidence that defendant solicited "an offense" without specifying what that offense was. (See *People v. George* (1978), 67 Ill. App. 3d 102, 106 (indictment must include the elements of the offense intended to be

charged, apprise defendant of the offense to enable him to prepare a defense, and sufficiently identify the offense to sustain a plea of acquittal or conviction in bar of any further prosecutions for the same offense).) In addition, the Illinois Pattern Jury Instructions require the insertion of the offense solicited in the solicitation instructions. (See Illinois Pattern Jury Instructions, Criminal, Nos. 6.01, 6.02 (2d ed. 1981).) We note that defendant, contrary to her position, tendered instructions specifying the offense of theft. We conclude that solicitation to commit theft is not a lesser-included offense of solicitation to commit murder.

We are similarly unpersuaded by defendant's argument that solicitation to commit theft is a lesser alternative offense to solicitation to commit murder. The concept of the lesser alternative offense was first raised in *People v. Pedersen* (1990), 195 Ill. App. 3d 121, 131-32 (McLaren, J., concurring). In the context of *People v. Pedersen*, the defendant is not entitled to an instruction on solicitation to commit theft. In *Pedersen*, defendant was charged with aggravated battery after he punched, bit, and kneed a police officer attempting to arrest him. The defendant tendered a jury instruction on resisting arrest which was refused by the trial court. The defendant there was not contending that he did *not* knee, punch and bite the officer; he merely argued that, given the facts presented, he could be found guilty of resisting arrest instead of aggravated battery.

In the case before us, defendant's argument does not follow these lines. Defendant argues that she committed a different crime based on different facts, *i.e.*, that she did not talk to Trotter about murder, but about theft. Clearly, there is no factual similarity between the facts alleged in the charge and those asserted by defendant. Without attempting to define how a lesser alternative offense might arise, we find this case to be factually inapposite to *Pedersen*.

We conclude that solicitation of theft is not a lesser-included offense, nor is there sufficient evidence to entitle the defendant to an instruction thereon. Therefore, the court did not err in refusing the defendant's instructions.

Defendant next raises several issues regarding her sentence. She first argues that the trial court erred because it believed that a conviction of solicitation carried with it a minimum sentence. Therefore, defendant seeks a new sentencing hearing. We do not find a new hearing necessary.

■■ The trial court stated, and both counsel concurred, that a conviction of solicitation entailed a minimum sentence of six years' imprisonment. Both parties now agree that such a conviction involves

no minimum term. (See Ill. Rev. Stat. 1987, ch. 38, par. 8—1(b); *People v. Eddington* (1979), 77 Ill. 2d 41, 47.) Defendant argues that the trial court's misapprehension of the law requires a new sentencing hearing. We disagree. A trial court's misapprehension of a minimum sentence requires a new sentencing hearing only when it appears that the court's mistaken belief arguably influenced the sentencing decision. (*Eddington*, 77 Ill. 2d at 48.) In *Eddington*, the trial court incorrectly believed that the statute provided a minimum four-year sentence for solicitation to commit murder; defendant was sentenced to a term of 20 to 40 years. (*Eddington*, 77 Ill. 2d at 47.) The court in *Eddington*, after stating the general rule above, found that there was no indication that the trial court used the incorrect minimum term as a reference point in determining the sentence ultimately imposed. (*Eddington*, 77 Ill. 2d at 48.) We conclude that the misapprehension of the law by the trial court in the case before us similarly was not used as a reference point in passing sentence. The court found factors in aggravation, including the fact that Emil was a paraplegic, and also stated that it sought to use the sentence to deter others from committing that crime. These facts lead us to conclude that the court did not use the incorrect minimum sentence as a reference point in determining defendant's ultimate sentence. We, therefore, hold that the error was harmless.

■■ Defendant next seeks a new sentencing hearing because the trial court allegedly incorrectly concluded that defendant was eligible to receive an extended-term sentence. Assuming, *arguendo*, defendant was not eligible for an extended-term sentence, defendant has not even attempted to show that the court's error affected the sentence actually imposed. (See *People v. White* (1986), 114 Ill. 2d 61, 68.) Even without enhancement, defendant faced up to 30 years' imprisonment; she received only 10 years. Clearly, the sentence imposed was not exaggerated by the court's consideration of the enhancement provisions. We, therefore, need not remand for resentencing.

■■ Defendant finally contends that the trial court's judgment and sentence order must be amended. The mittimus in this case declares that defendant was found guilty of "Solicitation to Commit Murder [*sic*]." Defendant argues that she was convicted of solicitation, not solicitation to commit murder, which crime did not exist at the time of her conviction. However, we see no prejudice to defendant from the mittimus as it reads. Defendant's argument that someone may confuse her conviction with a conviction of the later-enacted "Solicitation of Murder" (Ill. Rev. Stat. 1989, ch. 38, par. 8—1.1) is weak; the titles are not the same, and "Solicitation of Murder" did

not become effective until July 1, 1988, well after the date of defendant's crime. In addition, solicitation of murder carries a minimum sentence of 15 years; defendant was only sentenced to 10 years. There is little possibility that any confusion will result. Because we find no prejudice, we will not remand this cause for issuance of a new mittimus.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

JUSTICE REINHARD, specially concurring:

While I concur in the affirmance of the judgment of the circuit court, I do not believe that the term "lesser alternative offense" employed by defendant and Justice McLaren serves any useful purpose in the analysis of whether to give a lesser offense instruction. I am uncertain precisely what the term "lesser alternative offense" means as first coined by Justice McLaren in *People v. Pedersen* (1990), 195 Ill. App. 3d 121, 131-32 (McLaren, J., concurring), nor is his creation of the term "lesser non-included offense" in *Pedersen* enlightening on this subject. Rather, I rely on the authority of our supreme court in *People v. Bryant* (1986), 113 Ill. 2d 497, which states the appropriate analysis with respect to an instruction on a lesser offense which is not a lesser-included offense to the offense charged, as follows:

> "To the extent that the lesser offense must have a broad foundation in the instrument charging the greater, we believe that the indictment in this case set out the main outline of the lesser offense proposed by the defendant here. The property damage to the building was the obvious foundation of the charge; that the indictment did not expressly allege all the elements of the lesser offense is not, in our view, fatal under these circumstances. Notably, in the two cases consolidated in *Dace*, the lesser offense, theft, was simply named in the charging instruments, and, taken with the evidence introduced at the defendants' trials, that was found sufficient to warrant instructions on the lesser offenses." (113 Ill. 2d at 505.)

(See also *People v. Dace* (1984), 104 Ill. 2d 96, 102-03.) Applying that analysis here, solicitation to commit theft does not have a foundation in the charging instrument because theft, or the elements thereof, were never mentioned in the information.

I would further point out that this holding in *Bryant* may have been called into question in *People v. Schmidt* (1988), 126 Ill. 2d 179,

wherein the court stated, "where an accused is charged with a single offense he cannot be found guilty of an offense not charged unless it is a lesser included offense." (126 Ill. 2d at 184-85; see *Pedersen*, 195 Ill. App. 3d at 134 (Reinhard, J., dissenting).) Thus, under *Schmidt* the defendant here is not entitled to an instruction on solicitation to commit theft because it was neither charged nor is it a lesser-included offense. Whether there is a conflict between *Bryant* and *Schmidt* is a question which the supreme court may address in a future case.

JUSTICE GEIGER, specially concurring:

Subject to the following exception I join in Justice Reinhard's special concurrence.

Like Justice Reinhard, I disagree with Justice McLaren's term "lesser alternative offense"; rather, I believe that it is more appropriate to look to the criteria set forth in *People v. Bryant* (1986), 113 Ill. 2d 497, with consideration of *People v. Schmidt* (1988), 126 Ill. 2d 179.

I would emphasize that in the context of determining whether the defendant was entitled to an instruction on a lesser offense, the *Bryant* court did not simply give a traditional included offense analysis of the offense charged by the charging instrument. Rather, the court in *Bryant* looked to whether the lesser offense had a broad foundation in the charging instrument and whether the evidence presented at trial could have rationally sustained a conviction of the lesser offense and an acquittal of the greater. See 113 Ill. 2d at 503-06.

As Justice Reinhard points out, the later *Schmidt* decision stated that a defendant could be convicted of only a charged offense or a lesser-included offense of a charged offense (126 Ill. 2d at 184-85). However, in doing so it made no mention of *Bryant* or the *Bryant* discussion of the meaning of "included offense" in this context. Consequently, I would not find, as Justice Reinhard implies, that *Bryant's* apparently broad interpretation of "included offense" is moribund.

Since the record in this appeal fails to satisfy the requirements set forth in *Schmidt* or the broader test in *Bryant*, I concur that the trial court should be affirmed.