THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES PATRICK DALY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JON P. UMPHRYES, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRACY M. THOMPSON, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID J. WICKERT, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEWIS E. JONES, Defendant-Appellant.

Fourth District   Nos. 4—01—0575, 4—01—0576, 4—01—0577, 4—01—0657, 4—02—0823 cons.

Argued May 13, 2003.—Opinion filed June 30, 2003.

Daniel D. Yuhas, Jacqueline L. Bullard, Jenifer L. Johnson, Robert N. Markfield (argued), and Susan M. Wilham, all of State Appellate Defender's Office, of Springfield, for appellants.

Scott J. Butler, State's Attorney, of Rushville (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

This appeal involves five cases consolidated for the purpose of appeal. The relevant defendants, James Patrick Daly, Jon P. Umphryes, Tracy M. Thompson, David J. Wickert, and Lewis E. Jones, appeal the final orders of the Schuyler County circuit court convicting defendants of charges resulting from undercover drug buys accomplished by Schuyler County confidential informant Brian K. Jockisch. Similar issues are presented by the five cases. We focus on the first case, involving defendant Daly.

## I. BACKGROUND

Prior to August 1999, Brian Jockisch was a paid informant in Fulton and McDonough Counties. Jockisch made his living as a paid informant. In August 1999, Jockisch was charged, in Schuyler County, with unlawful possession of cannabis, a misdemeanor, and illegal harvesting of ginseng without a license. Attorney John Endres was appointed to represent Jockisch on those charges. On December 6, 1999, the charges were dismissed; four days later, Jockisch signed a written employment agreement with Schuyler County officials to make undercover drug buys. Under that agreement Jockisch made buys at least between December 28, 1999, and August 4, 2000.

In February 2000, domestic battery charges were filed against Jockisch in Brown County. Endres represented Jockisch on those charges as well. On July 7, 2000, Jockisch's domestic battery charges were dismissed.

On June 14, 2000, Jockisch's van was stopped in Brown County and cannabis was discovered, but the officer did not arrest Jockisch after learning that he was a paid informant for Schuyler County.

Jockisch testified that he purchased cocaine from defendant Daly in a controlled sale on July 24, 2000. The substance Jockisch gave to police tested inconclusive for controlled substances. Jockisch testified that he purchased cocaine from defendant in a second controlled sale on August 2, 2000. That substance tested positive for cocaine. Jockisch testified he purchased cocaine from defendant in a third controlled sale on August 4, 2000. The substance tested positive for cocaine.

On November 28, 2000, defendant Daly was charged with two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(c) (West 2000)) and one count of unlawful distribution of a look-alike substance (720 ILCS 570/404(b) (West 2000)). Attorney Endres was appointed to represent defendant.

The State filed a motion *in limine* to bar evidence of Jockisch's misconduct, stating it was unaware of any conviction for a felony or a crime involving dishonesty or false statement in the past 10 years. In response to the State's motion, Endres filed an offer of proof, reciting that the Schuyler County charges against Jockisch were dismissed December 6, 1999, and that within days of the dismissal—if not earlier—Jockisch started purchasing drugs for the Schuyler County sheriff's office. The offer of proof also stated that Endres was advised by the Brown County sheriff's office that Jockisch was doing some work for Brown County police and not to worry about the domestic battery charge, which was then dismissed.

During the hearing on the motion *in limine*, the former Schuyler County State's Attorney denied that the charges he dismissed on December 9, 1999, were dismissed in exchange for an agreement for Jockisch to purchase drugs. The State's Attorney testified the charges were dismissed because (1) although an additional charge, a domestic violence charge, had been contemplated, Jockisch and his then-wife had reconciled; (2) Jockisch's family members asked for leniency; (3) one of Jockisch's family members was married to the State's Attorney's ex-wife, who interceded on Jockisch's behalf; (4) Jockisch's father may have had a permit to raise ginseng; and (5) because of Jockisch's "rather pathetic appearance," the State's Attorney felt sorry for him. In response to the court's questioning, however, the State's Attorney admitted that he and Endres had advised the court at various times that Jockisch was working for law enforcement in other counties, and the State's Attorney was considering dismissing the case as a result of that work. The State's Attorney finally conceded that the work Jockisch had done in other counties may have been a consider-

ation in the December 9, 1999, dismissal. Endres then spoke of the work he had done as Jockisch's attorney. Endres stated that his memory was bad, that he may have known of Jockisch's work in other counties, but he had no knowledge of the Schuyler County agreement until about mid-2000.

The trial court determined that, with the closeness in times, the dismissal of the cases on December 6 and Jockisch's beginning to work for the Schuyler County sheriff's office on December 28 were "highly probative that, at least in Mr. Jockisch's mind, there was some kind of *quid pro quo*." The court concluded that Jockisch could be cross-examined about the connection between the cannabis dismissal on December 6, 1999, and the drug purchases, but not the Brown County dismissal of the domestic battery charges "unless you can tie up something specifically that there was a *quid pro quo*."

During his opening statement, the State's Attorney told the jury that Jockisch was a paid informant and may have possessed or used drugs. During the trial, Endres elicited testimony that the Schuyler County cannabis charge had been dismissed, but he did not introduce evidence that the dismissal was the result of an informant deal between law enforcement and Jockisch. Endres also elicited testimony regarding the Brown County cannabis incident, but again made no connection between the officer's failure to arrest Jockisch and Jockisch's informant agreement. Nor did Endres impeach Jockisch with the financial arrangement made in Schuyler County, whereby police paid Jockisch for successfully buying drugs from local residents and for his "time to testify," but reimbursed him only for expenses if he failed to make a buy. Under the agreement, Jockisch had been paid $5,650 plus $3,050 in living expenses. Another person had testified that she had observed Jockisch using drugs in July and August 2000, but Endres failed to call her as a witness, stating that his calls to her "have not been answered, and I don't have her here. I'm sorry *** that's my fault."

On the evidence presented, the jury convicted defendant Daly on all charges. On June 4, 2001, the trial court sentenced him to 4 years' probation on the Class 1 felony unlawful delivery counts (counts II and III) and 30 months' probation, including 6 months' home confinement, on the Class 3 felony unlawful distribution of a look-alike substance (count I). This appeal followed.

## II. ANALYSIS

Defendant argues that he was denied effective assistance of counsel because his trial counsel, Endres, labored under a *per se* conflict of interest created by Endres's prior representation of Jockisch, the

State's chief witness. We agree. We review this issue *de novo. People v. Miller*, 199 Ill. 2d 541, 544, 771 N.E.2d 386, 387 (2002).

■ ■ The sixth amendment of the Constitution of the United States guarantees the right to effective assistance of counsel. U.S. Const., amend. VI. This right entitles a criminal defendant to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations. *People v. Flores*, 128 Ill. 2d 66, 83, 538 N.E.2d 481, 486 (1989). Generally, to succeed on appeal under the test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), a defendant must demonstrate that he was actually prejudiced. Defendants need not demonstrate prejudice, however, if a *per se* conflict exists. *Miller*, 199 Ill. 2d at 545, 771 N.E.2d at 388. The *per se* conflict rule is designed to avoid (1) unfairness to the defendant, who may not be able to determine whether his representation was affected by the conflict, and (2) putting the honest practitioner in a position where he may be required to choose between conflicting duties. *People v. Thomas*, 131 Ill. 2d 104, 114, 545 N.E.2d 654, 658 (1989).

■ In a situation where defense counsel has previously represented one of the State's witnesses, a *per se* conflict of interest exists if the *professional relationship* between counsel and the witness is *contemporaneous* with counsel's representation of defendant. *Thomas*, 131 Ill. 2d at 111, 545 N.E.2d at 657. In such a case, " 'certain facts about the defense counsel's status, *by themselves*, *** engender a disabling conflict.' (Emphasis added.)" *Miller*, 199 Ill. 2d at 545, 771 N.E.2d at 388, quoting *People v. Lawson*, 163 Ill. 2d 187, 211 (1994); *People v. Moore*, 189 Ill. 2d 521, 538, 727 N.E.2d 348, 357 (2000) (defense counsel's simultaneous representation of the defendant and the State's witness creates a *per se* conflict of interest).

■ To determine whether a *per se* conflict exists, a court should "base the determination on a realistic appraisal of defense counsel's professional relationship to someone other than the defendant under the circumstances of each case." *People v. Hernandez*, 246 Ill. App. 3d 243, 249, 615 N.E.2d 843, 848 (1993). A court should not look to the technicalities of the law of offer and acceptance for guidance. *Hernandez*, 246 Ill. App. 3d at 249, 615 N.E.2d at 848. Where defendant fails to make a showing of a *per se* conflict of interest, defendant has the burden to show an actual conflict of interest and to demonstrate prejudice. *Flores*, 128 Ill. 2d at 83, 538 N.E.2d at 487.

■ The Supreme Court of Illinois in *People v. Enoch*, 146 Ill. 2d 44, 53, 585 N.E.2d 115, 120 (1991), held that defense counsel's previous representation of the State's witness in a separate felony matter four years prior to defendant's murder trial did not establish a contempora-

neous professional relationship. In *Flores*, the court found no contemporaneous professional relationship where defense counsel did not represent the State's witness at the time of the defendant's trial or "concerning" defendant's trial. *Flores*, 128 Ill. 2d at 83, 538 N.E.2d at 487. In *Hernandez*, the Second District held that a contemporaneous professional relationship did not exist between defense counsel and the State's witness where counsel represented the witness in her divorce case, which terminated long before defendant's murder trial. *Hernandez*, 246 Ill. App. 3d at 249, 615 N.E.2d at 848. In these cases, the courts examined the time frame and relevancy of defense counsel's prior representation of the State's witness. The State argues that "contemporaneous professional relationship" means that defense counsel must be engaged in a *simultaneous representation* of defendant and the State's witness. We disagree.

If Endres had represented Jockisch in a divorce case that terminated long before defendant Daly's felony trial, it might be possible to conclude there was no *per se* conflict of interest. That is not our situation, however. Unlike the cases cited by the State, Endres's representation of Jockisch was in a matter that concerned defendant's trial, a matter of significant relevance to defendant's trial. This relevance is shown by the fact that Endres, to properly represent Daly, needed to cross-examine Jockisch about matters that arose during the very time that Endres was representing Jockisch—specifically, the charges against Jockisch, the dismissal of those charges, and any agreement or arrangement Jockisch made with law-enforcement authorities to achieve dismissal. Clearly, given that Endres was representing Jockisch at the time, he could not properly cross-examine Jockisch about any of these matters. Thus, another way of looking at this situation is to view Endres's professional relationship with Jockisch as continuing indefinitely, at least to the extent that, in any subsequent case, Endres would ever be called upon to cross-examine Jockisch about matters occurring during the time Endres represented Jockisch. Further, where charges are dismissed on July 7 in the informant's case, and the informant allegedly makes a purchase from the defendant on July 24, resulting in charges being filed against the defendant on November 28, it is not accurate to say the informant's case terminated "long before" defendant's felony trial.

Although it seems likely, especially given the difficulty the State's Attorney and Endres had in remembering the transaction, that the December 10, 1999, agreement between the Schuyler County sheriff and Jockisch was in exchange for the December 6, 1999, dismissal of charges, that fact is not controlling. It is clear that the charges were dismissed, following negotiations by Endres, because of Jockisch's

status as an informant. Endres's negotiations resulted in Jockisch being out on the street, attempting to buy drugs from defendant. A successful prosecution of defendant would show the wisdom of dismissing the charges against Jockisch; an unsuccessful prosecution would cast doubt on the wisdom of that dismissal. Endres was placed in the position of attacking his work. A professional relationship is ongoing, even if formal representation has ended, if circumstances exist such that the attorney-client privilege may be violated. Endres could not be expected to impeach Jockisch with information that would void Jockisch's informant agreements and perhaps lead to retrial on the dismissed charges.

Endres's prior representation of Jockisch might affect Endres's performance in ways difficult to detect and demonstrate. *People v. Woidtke*, 313 Ill. App. 3d 399, 409, 729 N.E.2d 506, 513 (2000). For example, there is a danger that Endres would fail to conduct a rigorous cross-examination for fear of misusing confidential information. An attorney who represented a witness is likely, in cross-examining that witness, to avoid areas where he has personal knowledge, areas where an attorney-client privilege might exist. The State also has an interest in preventing defense counsel from cross-examining a critical State witness on matters that were the subject of a prior attorney-client relationship. The situation is "too fraught with the dangers of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of [defendant's] rights whether or not it in fact influences the attorney or the outcome of the case." *People v. Stoval*, 40 Ill. 2d 109, 113, 239 N.E.2d 441, 443 (1968).

In a *per se* conflict of interest case, we will reverse the convictions unless defendant has been made aware of the conflict and has knowingly waived his right to conflict-free counsel. *Woidtke*, 313 Ill. App. 3d at 409, 729 N.E.2d at 513. In this case, the record does not indicate and the State does not allege waiver. We are compelled to reverse the trial court and remand for a new trial. Accordingly, we do not reach defendant's various other arguments, including an ineffective-assistance-of-counsel claim based on actual conflict, failure to object to "recycled" jurors, failure to impeach Jockisch, failure to object to hearsay, and eliciting damaging testimony.

## III. CONCLUSION

The same issues that require reversal in the case of defendant Daly are also present in the cases of defendants Umphryes, Thompson, Wickert, and Jones. In other words, Endres was called upon in his representation of each of these other defendants, just as he was called

upon in his representation of Daly, to cross-examine Jockisch about matters occurring during the time Endres was representing Jockisch. For the reasons we earlier explained, this is not constitutionally permissible. Reversal and remand are required in all cases. The *per se* conflict of interest in these cases endangered defendants' constitutional rights. Accordingly, we reverse the trial court and remand for a new trial with directions.

Reversed and remanded with directions.

KNECHT and STEIGMANN, JJ., concur.