FOURTH DIVISION
FEBRUARY 1, 2007

No. 1-04-2917

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 28580 |
| | ) | |
| WILLIAM FLOWERS, | ) | Honorable |
| | ) | William G. Lacy, |
| Defendants-Appellant. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant William Flowers was convicted of two counts of first degree murder and sentenced to two concurrent sentences of 50 years in prison. Defendant now appeals.

The record on appeal discloses the following facts. Prior to trial, the trial court granted a defense request to discover the mental health records of witness Dewan Brooks. These records disclosed that Brooks had suffered from major depression, with complaints of auditory and visual hallucinations. Brooks had been prescribed a variety of medications as treatment.

On the first day of trial, defense counsel moved <u>in limine</u> for a competency hearing for Brooks. The trial court ruled that defense counsel had failed to raise a question regarding Brooks's competency to testify. The trial court also ruled that defense counsel would not be able to introduce the mental health records. The trial court further ruled that defense counsel would

be able to cross-examine Brooks regarding a conversation Brooks had with a defense investigator regarding these issues.

Jeremy Wolf, who testified as to his prior convictions and pending criminal case, stated that on November 3, 2000, he and Brooks awakened in a rental car at approximately 7 a.m. after a night of partying and smoking "blunts," which contain marijuana. Brooks testified that he and Dewan Brooks bought coffee at about 7:30 a.m., then bought cigarettes before going back to his house. Wolf testified that the two went back to sleep until approximately 10:30 a.m., at which time they went to the corner of Grenshaw and Springfield.

Wolf testified that James Pace--Brooks's brother--and Roger Allen were already at the corner. Brooks testified that Allen said he was going to "holler" at defendant, who was in the vicinity. Allen and defendant began talking but started fighting a few minutes later. Wolf testified that he and Brooks helped break up the fight. He could not recall what defendant said at that time.

Wolf testified that he, Brooks and Allen then went to the home of Jermon McGaughy at 3921 W. Fillmore, approximately half a block from the corner. Wolf testified that while they were on the porch waiting for McGaughy to come to the door, he saw a white Taurus or Lumina driving down the street toward them. The car came to a screeching halt. Wolf identified defendant as the driver of the car. Wolf testified that defendant opened the car door and stuck out his hand, which was holding some kind of a chrome gun. Wolf testified that defendant fired the gun six or seven times. Wolf testified that Allen was shot in the lower back and taken away by ambulance. Later that day, Wolf viewed a lineup and identified defendant as the shooter.

Brooks testified that after he and Wolf bought coffee, they stood around on the corner for about an hour before going to McGaughy's house at approximately 9 a.m. Brooks testified that

2

"they" were playing a game and getting high there.  Brooks testified that  he and Wolf went to the corner, where Pace got into a scuffle with defendant.  Brooks testified that he and Wolf helped his brother, including hitting the defendant.  Allen hit defendant "upside his head" with a bottle.

Brooks testified that defendant then said he would be back.  The group then went back to McGaughy's house for protection.  Brooks testified that while they waited for McGaughy to come to the door, Wolf noticed the approach of "Li'l Will."  The group began banging on McGaughy's door.  Brooks testified that he saw "[a] white Lumina 'cause Wolf he said that he got a white Lumina."  Brooks testified that he saw "Li'l Will" in the car, whom he identified in court as defendant.  Brooks testified that defendant reached out of the window and fired a silver gun five or six times.  After defendant drove away, Brooks saw Allen bleeding on the floor.  Later that day, Brooks viewed a lineup and identified defendant as the shooter.

On cross-examination, Brooks testified that he spoke with defense counsel and an investigator the day before his testimony.  Brooks denied telling them he did not actually see the shooter.  He admitted saying that he believed at the time that it was "Li'l Will" because everyone said it was.

The trial court sustained an objection to a defense question as to whether Brooks had any mental health issues in November 2000.  Brooks testified that he had suffered from depression.  Brooks denied that he had been hearing voices and seeing things in November 2000, but admitted that he told defense counsel and an investigator that.  Brooks admitted that he was supposed to be taking medications at that time, but could not recall which ones were prescribed at the time.  Brooks did remember being prescribed Risperdal.  Brooks admitted that he was not taking his medications at the time of the shooting.

Defense counsel also asked Brooks about his prior conviction on a home invasion charge, for which Brooks was on parole. Brooks admitted that he pleaded guilty to the charge while this case was pending and received a six-year sentence. The trial court sustained the State's objection to the question, "That was a heck of a deal for you, wasn't it?" During a sidebar, the trial court ruled that defense counsel could not pursue the line of questioning, absent evidence that Brooks had a cooperation plea agreement with the State.

Jermon McGaughy and his mother both testified, but neither witnessed the shooting. Willie Earl Tyler, who lived across the street from the McGaughys, testified to seeing the white car and hearing three gunshots. Tyler also testified that there may have been more than one person in the car.

Chicago police detective Rickey Galbreth testified that he responded to a police call regarding the shooting. Detective Galbreth spoke with Brooks and Wolf. According to Detective Galbreth, Brooks told him that defendant was the shooter. Detective Galbreth also testified that Brooks identified defendant from a photo array at the police station. After Detective Galbreth located and arrested defendant, Brooks and Wolf identified defendant in a lineup. Brooks also gave a statement regarding the shooting to an assistant State's Attorney. Detective Galbreth further testified that on November 5, 2000, the police impounded a white Chevy Lumina belonging to defendant's girlfriend.

Assistant medical examiner Nancy Jones testified that her autopsy of Allen showed the cause of death to be a gunshot wound to the body.

The defense called investigator Robert O'Neill as a witness. O'Neill testified that during an interview, Brooks said that he did not see the shooter and that he only said it was defendant because that is what everyone told him. On cross-examination O'Neill testified that he did not

take a statement from Brooks, but wrote a summary report of the conversation, based on his notes, without any review by Brooks.

Following closing arguments and jury instructions, the jury deliberated and found defendant guilty of first degree murder. The trial court denied defendant's posttrial motion and sentenced him to 50 years in prison. Defendant now appeals.

Defendant argues on appeal that the trial court denied his rights to due process and confrontation by precluding defense counsel from cross-examining Brooks about his possible motive to testify falsely. Cross-examination to show bias, interest, or motive to testify falsely is a matter of right. Although the circuit court has no discretionary power to deny the defendant this right, the circuit court does have broad discretion to preclude repetitive or unduly harassing questioning on these matters. People v. Triplett, 108 Ill. 2d 463, 475 (1985). A defendant need not show interest or motive in that any promises of leniency have, in fact, been made to the witness by the State or that any expectations of special favor exist in the mind of the witness, before cross-examining a witness as to possible bias. Triplett, 108 Ill. 2d at 476. Nor is a formal agreement necessary, if a defendant can show an implicit agreement to cooperate in return for a lenient sentence. See People v. Perkins, 292 Ill. App. 3d 624, 630 (1997). An error restricting such questioning may deny defendant a substantial right and this denial may constitute plain error which we may review notwithstanding defendant's failure to preserve the error by including it in his posttrial motion. People v. Ramey, 152 Ill. 2d 41, 68 (1992).

In this case, the trial court precluded cross-examination as to whether Brooks might have been promised leniency on the home invasion plea in return for cooperating in this case, on the ground that defendant did not have evidence of an agreement. The State notes there was no pending charge, but the Triplett court held that the connection is too remote where there is no

pending charge and the witness had not been placed on supervision or probation. Triplett, 108 Ill. 2d at 477; see Davis v. Alaska, 415 U.S. 308, 320-21, 39 L. Ed. 2d 317, 356, 94 S. Ct. 1105, 1112 (1974) (holding it reversible error to restrict cross-examination of juvenile witness on probation). In this case Brooks was on parole for the home invasion charge. Thus, the trial court erred under Raney and Triplett, despite the lack of any concrete evidence that Brooks had any agreement to cooperate with the State in this case, aside from the mere fact that he was allowed to plead to home invasion without use of a handgun.

Defendant also contends that the trial court unduly restricted his cross-examination of Brooks as to his mental health and improperly prevented the introduction of Brooks's mental health records. The mental health history of a witness is relevant as it relates to credibility, and is thus a permissible area of impeachment, but before such evidence may be introduced, its relevance must be established. People v. Williams, 147 Ill. 2d 173, 237 (1991). A defendant must be provided the opportunity to confront a witness with mental health records if the evidence would be useful in helping the jury to evaluate the truthfulness of the witness's testimony. People v. Bean, 137 Ill. 2d 65, 102 (1990). In Bean, the court found that otherwise-barred medical records would be admissible if they indicated a bias against the defendant or revealed the witness to be lacking in her ability to perceive, relate, or remember the occurrences about which she testified. Bean, 137 Ill. 2d at 102. This court has noted the importance of cross-examination where the mental health records of a witness state that he or she has experienced hallucinations. See, e.g., People v. Plummer, 344 Ill. App. 3d 1016, 1022-23 (2003).

In this case, the mental health records obtained in discovery showed that Brooks had severe major depression with psychotic features and complained of auditory and visual hallucinations. Treatment included the medications of Respirdal, Depakote, Haldol and Cogentin.

6

At trial, Brooks denied having such hallucinations at the time of the shooting, though he admitted saying so to a defense investigator and that he was not taking his medication on the day of the shooting. As defendant denied that he was hallucinating on the day of the shooting, it could be argued that the records would be admissible to show that he had complained of hallucinations in the past--a fact that would seem relevant not only to Brooks's ability to perceive the occurrences about which he testified, but also as to the credibility of his testimony that he was not halluci-nating on the day of the shooting when compared to his statement to the investigator. Thus, the trial court erred in precluding defense counsel from cross-examining Brooks further based on the information in the mental health records.

Nevertheless, the denial of a defendant's constitutional right to cross-examination does not always mandate reversal, but may be found to be harmless error. People v. Davis, 185 Ill. 2d 317, 338 (1998); Delaware v. Van Arsdall, 475 U.S. 673, 684, 89 L. Ed. 2d 674, 686, 106 S. Ct. 1431, 1438 (1986).

> "'The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course,

the overall strength of the prosecution's case.'" Davis, 185 Ill. 2d at 337, quoting Van Arsdall, 475 U.S. at 684, 89 L. Ed. 2d at 686-87, 106 S. Ct. at 1438 .

For example, in People v. Nutall, 312 Ill. App. 3d 620, 631 (2000), a case cited by the State, this court found harmless error where the testimony of an occurrence witness was used primarily to corroborate the defendant's statement.

In this case, Brooks was one of two eyewitnesses that formed the bulk of the State's case. Brooks's testimony was used primarily to corroborate Wolf's testimony, but Wolf's testimony had its own credibility issues. Moreover, Brooks--unlike Wolf--testified that they had been taking drugs the morning of the shooting. The trial court restricted the cross-examination of Brooks not only on a possible motive to cooperate with the State, but also as to mental health issues that related to his ability to perceive the events at issue. Reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See, e.g., People v. Gilliam, 172 Ill. 2d 484, 515 (1996). But we cannot conclude that the evidence against Flowers was so overwhelming that the error in restricting the cross-examination of Brooks was harmless beyond a reasonable doubt.

Given this conclusion, we need not address the remaining arguments in defendant's appeal.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed, and the case is remanded for a new trial.

Reversed and remanded.

QUINN, P.J., and MURPHY, J., concur.