958 N.E.2d 367 (2011)
354 Ill. Dec. 624
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Michael Dion DOPSON, Defendant-Appellant.
No. 4-10-0014.
Appellate Court of Illinois, Fourth District.
September 28, 2011.
*369 Michael J. Pelletier, State Appellate Defender, Johannah B. Weber, Deputy Defender, Lawrence J. O'Neill, Asst. Appellate Defender, Office of State Appellate Defender, for Michael Dion Dopson.
William A. Yoder, McLean County State's Attorney, Patrick Delfino, Director, Robert J. Biderman, Dep. Director, James C. Majors, Staff Atty., State's Attorneys Appellate Prosecutor, for People.

OPINION
Justice STEIGMANN delivered the judgment of the court, with opinion.
¶ 1 Following a May 2006 bench trial, the trial court convicted defendant, Michael Dion Dopson, of (1) delivery of a *370 controlled substance (less than one gram of a substance containing cocaine) (720 ILCS 570/401(d) (West 2004)) and (2) possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 2004)). The court later sentenced defendant to 12 years in prison.
¶ 2 In March 2008, defendant pro se filed a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 through 122-8 (West 2008)), arguing, in pertinent part, that he was afforded ineffective assistance of counsel because his trial counsel contemporaneously represented a State witness. In December 2009, the trial court conducted a hearing on defendant's postconviction petition and denied it, finding that defendant failed to establish a substantial showing of a deprivation of his constitutional right to effective assistance of counsel.
¶ 3 Defendant appeals, arguing that the trial court's denial of his postconviction petition was manifestly erroneous. We agree and reverse and remand for further proceedings.

¶ 4 I. BACKGROUND
¶ 5 On January 27, 2006, Anna Trotter, working as a confidential informant (CI) for the Bloomington police department, assisted in a controlled buy that resulted in defendant's arrest and ultimate conviction. Trotter's cooperation stemmed from her arrest the previous day for possession of cocaine and drug paraphernalia. It was not until after that controlled buy from defendant that the State promised not to charge her with possession of cocaine and drug paraphernalia in exchange for her testimony against defendant. At the time of the controlled buy, Trotter had a February 2005 forgery charge (case No. 05-CF-157) and a November 2005 obstructing-justice charge (case No. 05-CF-1138) pending against her in McLean County. John Wright of the McLean County public defender's office represented Trotter on both of those cases. Between January 27, 2006, and defendant's May 23, 2006, trial, the State charged Trotter in the following four additional cases in McLean County: (1) case No. 06-CF-356 (theft with a prior theft conviction); (2) case No. 06-CM-618 (possession of drug paraphernalia) (unrelated to the January 26, 2006, arrest); (3) case No. 06-DT-282 (driving under the influence, combination drug/alcohol and illegal transportation) and (4) case No. 06-TR-9647 (a traffic violation).
¶ 6 At 10 a.m. on March 13, 2006, Wright appeared on Trotter's behalf for status hearings in the forgery case and the unrelated obstructing-justice case. At 10:30 a.m. that same day, Wright appeared for the first time on defendant's behalf in this case. All of the appearances that day were presided over by Judge Ronald Dozier. At 10 a.m. on April 24, 2006, Wright again appeared before Judge Dozier on behalf of Trotter for final status hearings in those two cases and, at 11 a.m., separately on behalf of defendant for a status hearing in this case.
¶ 7 On May 1, 2006, the State notified Wright through a discovery disclosure that Trotter was the CI who assisted the police in defendant's arrest. This disclosure revealed that the State planned to call Trotter as a witness against defendant at his trial. Sometime after this disclosure, both of Trotter's pending cases, which had been handled by Wright up until that point, were transferred to Jim Tusek of the McLean County public defender's office. (The record does not contain any explanation for this change of counsel.) At that point, Wright had appeared on Trotter's behalf 14 separate times in the preceding 15 months, including 10 appearances at which Trotter was physically present in the courtroom.
*371 ¶ 8 At defendant's May 23, 2006, bench trial, Trotter testified as a State witness about her purchase of illicit drugs from defendant. During the State's direct examination of Trotter, she was questioned about each of her pending cases. The State also questioned Trotter concerning the two cases in which Wright had represented her, but did not delve into the facts of those pending cases or reveal that Wright was her counsel. Trotter testified that in exchange for her testimony against defendant, the State agreed not to charge her in connection with her January 26, 2006, arrest for possession of cocaine and drug paraphernalia. Trotter also testified that, despite the absence of any promise regarding her pending cases, she "absolutely" hoped that her testimony against defendant would garner her some benefit.
¶ 9 Wright, who represented defendant at his trial, cross-examined Trotter about (1) the January arrest that led to her agreement to cooperate as a CI; (2) her failure to abide by that agreement, which she apparently violated by using drugs and committing additional crimes; (3) her expectations about receiving some benefit in exchange for her testimony; and (4) her mental health. Wright did not challenge Trotter's veracity by eliciting testimony regarding any of her pending cases, including the forgery charge and the obstructing-justice charges on which he represented her.
¶ 10 Following the presentation of additional evidence and argument, the trial court convicted defendant of (1) possession of a controlled substance (less than one gram of a substance containing cocaine) (720 ILCS 570/401(d) (West 2004)) and (2) possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 2004)). The court later sentenced defendant to 12 years in prison.
¶ 11 Defendant appealed, and this court affirmed. People v. Dopson, No. 4-06-0972, 374 Ill.App.3d 1143, 348 Ill.Dec. 691, 944 N.E.2d 932 (Aug. 24, 2007) (unpublished order under Supreme Court Rule 23).
¶ 12 In July 2008, defendant pro se filed a postconviction petition under the Act (725 ILCS 5/122-1 through 122-8 (West 2008)), arguing that he was denied his right to effective assistance of counsel because his attorney was operating under a per se conflict of interest arising from his prior and contemporaneous representation of Trotter. At a November 2009 third-stage evidentiary hearing on defendant's postconviction petition, Wright testified, in pertinent part, that he did not recall (1) representing Trotter in any cases (specifically, Wright stated, "I don't know if I recall explicitly in terms of having my own recollection"); (2) the specifics about Trotter's cases; (3) negotiations with the State regarding Trotter's cases; (4) whether he recognized Trotter as his former client during defendant's trial; (5) the nature of the questions he asked of Trotter at defendant's trial; (6) whether he revealed to defendant or anyone in defendant's family that he had previously represented Trotter; (7) the date he began representing defendant; (8) the date that he stopped representing Trotter; (9) the substance of what occurred at Trotter and defendant's March 13, 2006, court hearings; (10) meeting with Trotter outside of court concerning the cases on which he represented her; (11) meeting with Trotter in court during status hearings; (12) the specific document that identified Trotter as the State's witness against defendant; or (13) filing any motions on Trotter's behalf during his representation of her in those two cases.
¶ 13 In December 2009, the trial court, reasoning that a per se conflict of interest did not exist because Wright did not represent *372 Trotter at the time of defendant's trial, entered a written order that denied defendant's postconviction petition.
¶ 14 This appeal followed.

¶ 15 II. THE TRIAL COURT'S THIRD-STAGE DENIAL OF DEFENDANT'S PETITION FOR POSTCONVICTION RELIEF

¶ 16 A. Proceedings Under the Act
¶ 17 A defendant may proceed under the Act by alleging that "in the proceedings which resulted in his or her conviction[,] there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both" (725 ILCS 5/122-1(a)(1) (West 2008)). In noncapital cases, the Act establishes a three-stage process for adjudicating a postconviction petition (725 ILCS 5/122-1 through 122-8 (West 2008)). People v. Jones, 213 Ill.2d 498, 503, 290 Ill. Dec. 519, 821 N.E.2d 1093, 1096 (2004). At the first stage, "the trial court, without input from the State, examines the petition only to determine if [it alleges] a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit." (Emphasis in original.) People v. Phyfiher, 361 Ill.App.3d 881, 883, 297 Ill.Dec. 694, 838 N.E.2d 181, 184 (2005). "Section 122-2.1 [of the Act] directs that if the defendant is sentenced to imprisonment (rather than death) and the circuit court determines that the petition is frivolous or patently without merit, it shall be dismissed in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2004)." People v. Torres, 228 Ill.2d 382, 394, 320 Ill.Dec. 874, 888 N.E.2d 91, 99-100 (2008).
¶ 18 If a petition is not dismissed at the first stage, it proceeds to the second stage, at which point section 122-4 of the Act provides for the appointment of counsel for an indigent defendant (725 ILCS 5/122-4 (West 2008)). At the second stage, (1) the State has the option to either answer or move to dismiss the petition (725 ILCS 5/122-5 (West 2008)), and (2) the trial court determines whether the petition alleges a "substantial showing of a constitutional violation" (Phyfiher, 361 Ill. App.3d at 883, 297 Ill.Dec. 694, 838 N.E.2d at 184). At the second stage, however, "[a] defendant is not entitled to an evidentiary hearing * * * as a matter of right." People v. Makiel, 358 Ill.App.3d 102, 105, 294 Ill.Dec. 319, 830 N.E.2d 731, 736 (2005). To be entitled to an evidentiary hearing, a petitioner must show specific and factual assertions. People v. Broughton, 344 Ill.App.3d 232, 236, 279 Ill.Dec. 149, 799 N.E.2d 952, 956 (2003). If the allegations in the petition, supported by the record and accompanying affidavits, demonstrate a substantial violation of a constitutional right, the petition proceeds to the third stage, at which point the court conducts an evidentiary hearing. Phyfiher, 361 Ill.App.3d at 883-84, 297 Ill.Dec. 694, 838 N.E.2d at 184.
¶ 19 We review the trial court's decision following a third-stage evidentiary hearing under the manifestly erroneous standard. People v. Pendleton, 223 Ill.2d 458, 473, 308 Ill.Dec. 434, 861 N.E.2d 999, 1008 (2006). In such a hearing, the court serves as the fact finder, and thus, it is the court's function to determine the witnesses' credibility, decide the weight to be given their testimony, and resolve any evidentiary conflicts. People v. Chatman, 357 Ill.App.3d 695, 704, 294 Ill.Dec. 21, 830 N.E.2d 21, 30 (2005). Therefore, a reviewing court may not substitute its judgment for that of the trial court and will not reverse the court's judgment unless it is clearly evident, plain, and indisputable that the decision was erroneous. Chatman, 357 *373 Ill.App.3d at 704, 294 Ill.Dec. 21, 830 N.E.2d at 30.

¶ 20 B. Defendant's Claim That the Trial Court's Denial of His Petition for Postconviction Relief Was Manifestly Erroneous
¶ 21 Defendant argues that the trial court's denial of his postconviction petition was manifestly erroneous. In particular, defendant contends that Wright's prior and contemporaneous representation of Trotter, the State's witness, constituted a per se conflict of interest, which rendered Wright's assistance ineffective. We agree.
¶ 22 The sixth amendment of the United States Constitution (U.S. Const., amend. VI) guarantees to defendants in criminal cases the right to effective assistance of counsel. This includes the right to conflict-free representation. People v. Hernandez, 231 Ill.2d 134, 142, 324 Ill.Dec. 511, 896 N.E.2d 297, 303 (2008). The test for ineffective assistance of counsel is generally governed by the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires reversal when a defendant can show (1) deficient performance by counsel that (2) prejudiced him such that he was deprived of a fair trial. But if the record reveals a per se conflict of interest, "`there is no need to show that the attorney's actual performance was in any way affected by the existence of the conflict.'" People v. Morales, 209 Ill.2d 340, 345, 283 Ill.Dec. 544, 808 N.E.2d 510, 513 (2004) (quoting People v. Spreitzer, 123 Ill.2d 1, 15, 121 Ill.Dec. 224, 525 N.E.2d 30, 35 (1988)). In other words, "a per se conflict is grounds for reversal unless the defendant waived his right to conflict-free counsel." Morales, 209 Ill.2d at 345, 283 Ill.Dec. 544, 808 N.E.2d at 513.
¶ 23 The per se conflict rule is intended to "avoid (1) unfairness to the defendant, who may not be able to determine whether his representation was affected by the conflict, and (2) putting the honest practitioner in a position where he may be required to choose between conflicting duties." People v. Daly, 341 Ill. App.3d 372, 376, 275 Ill.Dec. 215, 792 N.E.2d 446, 450 (2003).
¶ 24 The rule applies in situations where the risk of prejudice against the defendant is inherent in counsel's prior or contemporaneous representation of defendant and the State's witness. People v. Taylor, 237 Ill.2d 356, 374, 341 Ill.Dec. 445, 930 N.E.2d 959, 971 (2010); Hernandez, 231 Ill.2d at 143-44, 324 Ill.Dec. 511, 896 N.E.2d at 303-04. Because prejudicially deficient performance arising from a conflict of interest will often manifest itself only in the form of omissions, the per se conflict rule carves out an exception to the general requirement that defendants asserting an ineffective-assistance-of-counsel claim identify specific instances of deficient counsel performance. Taylor, 237 Ill.2d at 374-75, 341 Ill.Dec. 445, 930 N.E.2d at 971. In such a situation, "`[i]t is what is not in the record, or what is incapable of being reflected by the record, that prompts us to apply the per se conflict-of-interest rule.'" In re Quadaysha C., 409 Ill.App.3d 1020, 1024, 350 Ill.Dec. 920, 949 N.E.2d 712, 715 (2011) (quoting In re S.G., 347 Ill.App.3d 476, 481, 283 Ill.Dec. 405, 807 N.E.2d 1246, 1250 (2004)). Thus, the per se rule stands for the proposition that "`the mere existence of the conflict is sufficient to constitute a violation of [defendant's] rights whether or not it in fact influences the attorney or the outcome of the case.'" Daly, 341 Ill.App.3d at 378, 275 Ill.Dec. 215, 792 N.E.2d at 451 (quoting People v. Stoval, 40 Ill.2d 109, 113, 239 N.E.2d 441, 443 (1968)).
*374 ¶ 25 A per se conflict exists when "defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution." Taylor, 237 Ill.2d at 374, 341 Ill.Dec. 445, 930 N.E.2d at 971; Hernandez, 231 Ill.2d at 143, 324 Ill.Dec. 511, 896 N.E.2d at 303. In such instances, no more than defense counsel's prior or contemporaneous representation of the State's witness is necessary to establish a per se conflict. Daly, 341 Ill.App.3d at 376, 275 Ill.Dec. 215, 792 N.E.2d at 450.
¶ 26 In this case, the record shows that Wright represented Trotter from February 2005 through April 2006. During that time, Trotter's cooperation with police led to defendant's arrest. Following defendant's arrest, Wright twice appeared on behalf of both Trotter and defendant on the same day (March 13, 2006, and April 24, 2006), back-to-back, before the same judge, albeit in separate matters. Trotter testified and was cross-examined by Wright at defendant's May 23, 2006, bench trial, just four weeks after Wright last appeared in court on her behalf. Wright never informed defendant that he had previously represented Trotter. Nevertheless, the State claims that Wright did not contemporaneously represent Trotter and defendant because (1) he did not represent Trotter at the time of defendant's trial and (2) his prior representation did not involve charges or facts that were "commingled" with defendant's case. We find these claims unpersuasive.
¶ 27 The States attempt to narrow the scope of the per se conflict-of-interest rule belies its underlying purpose. The rule presupposes that defense counsel's vigorous cross-examination of the State witness should be unhindered by the need to avoid privileged attorney-client information. That purpose does not suggest that dual representation of a defendant and a State witness creates a per se conflict only if the dual representation is ongoing at the time of trial. The attorney-client privilege continues even after formal representation ends, so the fact that Wright was not Trotter's attorney at the time of trial did not therefore permit him to elicit privileged information obtained during that prior representation. Whether such information existed, or would have been useful to the defense, is irrelevant because such questions concern whether the conflict resulted in prejudice and, as we have previously explained, prejudice is beyond the scope of the per se conflict rule. Daly, 341 Ill.App.3d at 378, 275 Ill.Dec. 215, 792 N.E.2d at 451.
¶ 28 To limit the meaning of "contemporaneous representation," as the State proposes, to representation solely at the time of trial, or representation involving charges or facts commingled with the defendant's case, would unduly limit the scope of the per se conflict-of-interest rule. Such a construction ignores the importance of impeaching the credibility of witnesses, even if the information elicited for purposes of impeachment is wholly unrelated to the facts of defendant's case. If defense counsel is in the position of cross-examining his former client, who has now turned State's witness, the attorney-client privilege will likely chill his abilityor willingnessto impeach by vigorously inquiring into the pending charges for which he had previously represented that witness, and rightly so. The per se conflict-of-interest rule is intended to avoid such a scenario.
¶ 29 Indeed, when a State witness has criminal charges pending against her at the time she agrees to testify against a defendant, defense counsel's inquiry into her motivations to testify should be thorough and unconstrained. See People v. Ramey, 152 Ill.2d 41, 67, 178 Ill.Dec. *375 19, 604 N.E.2d 275, 287 (1992) ("The widest latitude should be given the defense on cross-examination when trying to establish a witness' bias or motive."). Moreover, the defendant need not prove the existence of any promise between the witness and the State before inquiring into the witness's expectations of leniency in exchange for her testimony. People v. Triplett, 108 Ill.2d 463, 476, 92 Ill.Dec. 454, 485 N.E.2d 9, 15 (1985); see also People v. Paisley, 149 Ill.App.3d 556, 560, 102 Ill.Dec. 474, 500 N.E.2d 96, 99 (1986) ("The pending charges of a witness may be shown or inquired into where it would reasonably indicate that his testimony might be influenced by bias, interest, or a motive to testify falsely."). In such a situation, the trier of fact "is entitled to know the nature of the pending charge[s] in order that it will have before it complete information so as to be better able to resolve the bias question." People v. Rufus, 104 Ill.App.3d 467, 474, 60 Ill.Dec. 190, 432 N.E.2d 1089, 1095 (1982). Indeed, a criminal defendant is virtually unrestricted in his ability to cross-examine witnesses regarding their expectation of leniency in exchange for their testimony. See People v. Flowers, 371 Ill.App.3d 326, 329, 308 Ill.Dec. 882, 862 N.E.2d 1085, 1089 (2007) (reversible error for the trial court to preclude the defendant from cross-examining the State's witness regarding whether he had been promised leniency in exchange for his cooperation); see also People v. Balayants, 343 Ill.App.3d 602, 605-06, 278 Ill.Dec. 442, 798 N.E.2d 826, 830 (2003) (reversible error for the trial court to preclude the defendant from cross-examining the State's key witness regarding the specific nature of his pending aggravated-robbery charges in the same county); Ramey, 152 Ill.2d at 67-68, 178 Ill.Dec. 19, 604 N.E.2d at 287 (reversible error for the trial court to preclude the defendant from cross-examining the State's witness regarding his hopes that the State would take his testimony into consideration in sentencing him on unrelated charges).
¶ 30 We read the aforementioned cases to stand for the proposition that, to enable a defendant to demonstrate the State's witness' bias or motive to testify falsely, it is entirely proper for defense counsel to elicit testimony that adequately conveys to the trier of fact the full weight and nature of the criminal charges pending against that witness. Doing so ensures that the trier of fact may more accurately gauge the witness' credibility by weighing both the fear of potential punishment and the hope of potential benefit that the witness believes he or she stands to gain from testifying for the State.
¶ 31 Here, the record shows that at the time of defendant's trial, Trotter had three separate misdemeanors and three separate felonies pending against her in McLean County. The record also reveals that McLean County Assistant State's Attorney Jeffrey Horve, who represented the State and examined Trotter at defendant's trial, also appeared multiple times on behalf of the State in both of Trotter's pending felony casesincluding an appearance on May 11, 2006, just 12 days before defendant's trial. These facts alone "reasonably indicate that [Trotter's] testimony might be influenced by bias, interest, or a motive to testify falsely" against defendant, so as to garner favor with the same body responsible for prosecuting her in her pending cases. Paisley, 149 Ill.App.3d at 560, 102 Ill.Dec. 474, 500 N.E.2d at 99. Moreover, because Trotter orchestrated and executed the controlled buy that resulted in defendant's arrest, and because she was the only witness who directly observed the alleged drug transaction, her credibility was an essential component of the State's case. Although the State presented some evidence to corroborate her version of *376 events, not much was significant. Under these circumstances, one would expect that a thorough attack on Trotter's credibility would be one of the defining features of defense counsel's strategy.
¶ 32 Nevertheless, Wright's attack on Trotter's credibility was mild, at best. For instance, although the State listed Trotter's pending cases during its direct examination of her, it did not go into any detail regarding the seriousness of those offenses or the possible prison time she faced. That line of inquiry could have been pursued by defense counsel but was not. As noted earlier, Wright's impeachment of Trotter regarding her pending criminal cases was limited to (1) the drug arrest that led to her cooperation as a CI and (2) the drug arrest that constituted a violation of her agreement with the State. In fact, the only testimony that Wright elicited from Trotter on cross-examination regarding her expectation of any benefits stemming from her testimony consisted of the following exchange:
"[WRIGHT:] I think you testified you hadn't specifically been promised anything?
[TROTTER:] No, I have not.
[WRIGHT:] But you are sure hoping you will get some benefit because of what you are telling the court today?
[TROTTER:] Yes."
¶ 33 Wright essentially passed on the opportunity to illustrate for the trier of fact the full nature and weight of Trotter's pending criminal charges and, thus, the full extent of her potential motivation to testify falsely against defendant. Whether Wright's limited cross-examination of Trotter was the result of an effort to avoid eliciting testimony regarding his prior representation of her, or whether it was his idea of sound trial strategy, we cannot determine on appeal; however, the per se conflict-of-interest rule saves us the effort of trying.
¶ 34 As we noted earlier, Wright testified at the evidentiary hearing that he did not recall whether he recognized Trotter as his former client at the time of defendant's trial. The rule, however, makes no exception for such absentmindedness. To remain faithful to the aforementioned purpose of the rule, we impute to trial counsel his recognition of the identity of those he represents, even after formal representation ends.
¶ 35 Here, the only question before us is whether Wright's representation of Trotter, clearly an "entity assisting the prosecution" was "prior or contemporaneous" to Wright's representation of defendant. Taylor, 237 Ill.2d at 374, 341 Ill. Dec. 445, 930 N.E.2d at 971. The breadth of the per se conflict-of-interest rule reflects the importance of removing doubt in the minds of the convicted that they were afforded loyal, unconflicted representation at trial. We apply the rule based on a "`realistic appraisal of defense counsel's professional relationship to someone other than the defendant'" and not on technicalities of the law, such as whether or not the dual representation existed at the moment the trial commenced. Daly, 341 Ill.App.3d at 376, 275 Ill.Dec. 215, 792 N.E.2d at 450 (quoting People v. Hernandez, 246 Ill. App.3d 243, 249, 186 Ill.Dec. 39, 615 N.E.2d 843, 848 (1993)). Because we conclude Wright had a per se conflict of interest that defendant was unable to waive because he was not aware that such a conflict existed, defendant was denied the effective assistance of counsel.
¶ 36 Accordingly, we conclude that the trial court's denial of defendant's postconviction petition was manifestly erroneous.

*377 ¶ 37 III. CONCLUSION
¶ 38 For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.
¶ 39 Reversed and remanded.
Justices APPLETON and COOK concurred in the judgment and opinion.